## DOC LEACH v. THE STATE.

No. 3332.     Decided January 31, 1906.

### 1.—Local Option—Evidence—Identification.

See opinion for facts which appellant contends are not sufficient to identify him as the seller of the whisky; but upon which the court expresses no opinion.

**2.—Same—First Application for Continuance—Diligence—Materiality of Testimony—Motion for New Trial.**

Where upon trial for a violation of the local option law the question at issue was the identification of appellant, and he showed in his motion for new trial that he expected to prove by the absent witness in his motion for continuance that he was not present or participated in the sale of the whisky in the alleged transaction; that he was probably misled by the publication as to the setting of his case, etc., and therefore did not issue process for the absent witness; that this was his first application for continuance, etc., a new trial should have been granted.

Appeal from the County Court of Grayson. Tried below before Hon. G. P. Webb.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and twenty days confinement in the county jail.

The opinion states the case.

No brief for appellant has reached the hands of the Reporter.

*Howard Martin,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Conviction for violating the local option law.

Quillin testified that on the 19th of May, 1905, while in Denison, in company with John Evans, they visited cold storage houses, eight in number. They were in Denison about an hour, from 11 o'clock until 12 o'clock. While there they went in the place known as "McDougall's" and bought two drinks of liquor. Evans was with him at the time. Witness did not remember having any transaction with appellant and stated he could not identify appellant as the man from whom he purchased the liquor, but the man from whom he purchased the liquor was a larger man than defendant. Evans testified that he and Quillin, while in Denison went into a place known as McDougall's or Morton's. He himself did not buy any liquor or have any business transactions with defendant. Quillin bought two drinks in said place which they drank, and Quillin paid for them. This is his identificaton of defendant: "I identify defendant from a memorandum that I made after Quillin and I had frequented eight cold storage houses in Denison, and were on the car going to Sherman. At which time Quillin and myself talked about the places we had been and I made said notation of each place on the back of an envelope. Relative to the notation I made about this defendant, I wrote on the envelope, 'Thin face, Morton's.' That is the only notation I made relative to this defendant and this transation. I would not want to swear that this was the man; I realize what it means to him, but as I said before I would identify him as being the man. I do not know that I could pick him out in a crowd. It is a fact that the prosecuting attorney pointed this man (defendant) out to me since I came into the courtroom as the man with whom the transaction was had. I do not

care to swear that I could have identified the man if he had not been pointed out to me, but I would identify him as being the man. I have no other memorandum or notation relative to this defendant than 'thin face, Morton's.' I never saw this defendant before. Quillin and I left Sherman about 10:30, and arrived in Denison about 11:15. I was back in Sherman before 1 o'clock, and it takes forty-five minutes to make the run between Denison and Sherman on the car. I presume we were in Denison about an hour." Appellant took the stand in his own behalf and said he worked for Mike Collins in a cold storage house in Denison; that they kept goods in store for members of the cold storage club on ice; that he knew each and every member of the club for which he worked, and when they called he waited on them. "My hours for working are from 7 a. m. until 11 a. m., and from 2 p. m. to 7 p. m. On the 19th of May, 1905, I left said place of business at 11 o'clock a. m., and did not return until 2 p. m. I did not see Quillin or Evans on said date. I do not know either of them. I never did sell Quillin or Evans on or about the 19th of May any intoxicating liquor. At the time that witnesses state they were in said place of business I was home at dinner and did not return until 2 p. m. of said day." It is contended that the evidence is not sufficient to identify appellant as the seller of the whisky to Quillin. In the view we take of the case a discussion of this question is pretermitted.

Appellant applied for continuance on account of the absence of Will Johnson, passenger conductor on the Missouri, Kansas and Texas Railway. Diligence is wanting in the issuance of process: in fact process was not issued at all. The facts in regard to this matter are stated in the application as follows: "That he was not notified he was to be placed on trial until 10 o'clock on the morning of May 25, at which time he was telephoned by his attorney from Sherman to Denison, where he lived that his trial would be on said 25th of May. He had not made preparation for trial because the setting of all criminal cases in the county court for that term had been made for Monday, May 15th, to and including May 23rd; that he was not arrested until May 20th. Upon receiving the telephone message he immediately went to Sherman, arrived there at 11:45, and his case was called at 11:50, the same morning. At the time he was placed under arrest on this charge, on the 20th of May, Johnson spoke to him in regard to his case and expressed a willingness and desire to be a witness in his behalf; that Johnson "was absent on his run as said passenger conductor between Denison and Smithville at the time, and therefore he did not have time to have a subpoena issued for the witness and secure his attendance. By this witness he expected to prove that at the time of the alleged sale, Johnson was with prosecutor; that defendant was not present and did not make any such sale, and was not at the time in the alleged place of business; that said witness is well acquainted with defendant and knows all the circumstances and he was present at the time." The court approves this with the quali-

fication, that the docket was set two weeks ahead and the setting published in the newspaper. In such publication it was stated that all cases filed after that day were set for the 23rd; and that this case was regularly reached on the 25th; that there was no reason appellant could not have known it. It is conceded by the State that the facts were material, but it is claimed that the diligence is not sufficient. On motion for new trial, applications for continuance overruled, being the first, the same strictness of diligence is not required as in a subsequent application. The court states that all cases that were not mentioned in the publication and filed thereafter would be set down for the 23rd; that publication stated that all criminal cases were set for trial for that term on May 15th, to and including Tuesday, May 23rd. Appellant was arrested on the 20th, and his case was called for trial on the 25th. It may have been that appellant was misled by these matters thinking that his case would not be tried during the term, and therefore had not issued process, and that when notified by Evans his case would be called on the 25th it was too late to issue process. While the showing may not be strictly a legal one, yet there are very strong equities presented by the motion, when viewed in the light of the testimony, especially the refusal of Quillin to identify him, and the uncertainty on the part of Evans as to his identification. If Johnson would testify as stated, it may be that the jury would not convict defendant. If Johnson's testimony is true, appellant is not guilty. Appellant testified that he was absent from the place of the sale, but the jury, on account of his interest, may have discredited his evidence. While the diligence is not complete, or is not even legally sufficient, yet on motion for new trial, it being the first application, if the facts are material and go to the innocence of a party, the rule has not been so rigid in sustaining the action of the court overruling applications for continuance. The rule in regard to cumulative evidence does not enter into the case under such circumstances. We believe, taking the whole record together and the circumstances attending the arrest, publication as to the setting of the cases in the newspaper and other matters, that appellant has not had a fair trial, and that his excuse for diligence is reasonable. Because a new trial was not granted on this ground, the judgment is reversed and the cause remanded.

*Reversed and remanded.*